## Court of Appeals.

*October*, 1884.

## PEOPLE *ex rel.* VAN HOUTER *v.* SADLER.

KEEPER OF BAWDY HOUSE.—DISORDERLY PERSONS.—L. 1874, CH. 209, AMENDED BY L. 1876, CH. 108.

The common law remedy by indictment against one keeping a bawdy house, is not abolished by the Code of Criminal Procedure (§ 899 *et seq.*)[*]

The following portion of L. 1874, ch. 209, as amended by L. 1876, ch. 108, in reference to the imprisonment of the convict in a penitentiary, " there to be received, kept and employed in the manner prescribed by

---

[*] See People *v.* Miller, *infra*, p. 475.

law, and the rules and discipline of such penitentiary " is no part of
the sentence under that statute, but is merely directory to the keeper
of the penitentiary.

APPEAL by Willard Van Houter, the relator, from an order
of the General Term of the Supreme Court in the Fourth
Department, of March 31, 1884.

The defendant was indicted in the Tompkins county Oyer
and Terminer, November 24, 1882, for keeping a bawdy house
from June 12, 1882, to November 22, 1882, at Ithaca, N. Y.
He was arraigned, tried and convicted at the Court of Sessions
of Tompkins county, Hon. MARCUS LYON, presiding, on
October 11, 1883.

Upon such conviction he was sentenced " to be imprisoned
in the Onondaga County Penitentiary, for the term of one year,
and to pay a fine of $250, to stand committed until paid, not
exceeding two hundred and fifty days after the expiration of
the one year of imprisonment."

The warrant of commitment upon such sentence reads
". . . the judgment of this court having been duly pronounced
against said Willard Van Houter, upon said conviction, by
which said Willard Van Houter was sentenced to imprisonment
in the Onondaga county Penitentiary in the county of Onon-
daga, *there to be received, kept and employed in the manner
prescribed by law, and the rules and discipline of* said Onondaga
county Penitentiary, for the term of one year ; and the said
Willard Van Houter, in addition to said imprisonment, was also
sentenced to pay a fine of two hundred and fifty dollars, and to
remain imprisoned in said penitentiary until said fine of two
hundred and fifty dollars was paid, not exceeding, however,
more than two hundred and fifty days, after the expiration of
said term of one year's imprisonment," etc., etc.

A writ of *habeas corpus* was obtained on the following
grounds, among others : First, that the court had no authority
to sentence prisoner for a period exceeding six months, and
then only in the manner pointed out by the statute, relating to
disorderly persons (Pen. Code, § 899, etc.) ; the common law
proceedings by indictment relating to said crimes or offenses,
being abrogated and repealed by implication by the Penal Code ;

Second, the commitment does not state the offense with sufficient certainty, and does not agree with the sentence or judgment.

The writ was dismissed October 31, 1883, by Justice VANN, upon a return of the respondent, setting forth the commitment and certificate of the minutes of the court, and upon appeal to the General Term of the Supreme Court, the order dismissing the writ was affirmed, March 31, 1884, and from this order of affirmance the relator appealed to this court.

The points raised upon this appeal fully appear in the opinion.

*J. L. Baker*, for relator, appellant.

*Clarence L. Smith*, district attorney, for respondent.

EARL, J.—The Revised Statutes (vol. 1, p. 638) contained provisions for dealing with disorderly persons, among whom were persons keeping a bawdy house, and those provisions were substantially re-enacted in the Code of Criminal Procedure, § 899. The main purpose of those provisions is to arrest the disorderly practices named, by compelling a disorderly person to give security for his good behavior. If he will give the security required, he cannot be punished. If the security be not given, he may be committed to the county jail for not exceeding six months, from which he may be discharged at any time upon giving security. *Code of Crim. Pro.* §§ 902, 903, 907, 910.

The keeping of a bawdy house was also a misdemeanor at common law, and is now made so by the Penal Code, § 322, which took effect December 6, 1882.

The defendant was indicted November 24, 1882, for keeping a bawdy house between June 12, 1883, and the day of the indictment, and hence the case is governed by the common law. There was, therefore, this state of things, when this offense was committed. The relator, while he kept the bawdy house, could have been arrested and dealt with as a disorderly person, or he could have been indicted and punished for keeping such a house. The two proceedings have different

ends in view, and could both be taken against any person who kept such a house. Such person could be arrested as disorderly, and compelled to give the security required, and then afterward he could be indicted and punished for having kept a bawdy house.

Therefore the common law remedy by indictment against the relator was not abolished or superseded by, or inconsistent with, the provisions of the Code of Criminal Procedure as to disorderly persons.

The relator was not, as he claims, sentenced under section 15 of the Penal Code, as that was not applicable to this crime committed before that Code took effect. But he was sentenced under a similar section of the Revised Statutes (vol. 2, p. 697, § 40), which provides " that every person who shall be convicted of any misdemeanor, the punishment for which is not prescribed in this or any other statute, shall be punished by imprisonment in a county jail not exceeding one year, or by a fine not exceeding '$250, or by both such fine and imprisonment." When this crime was committed, there was no other statute providing for its punishment.

Therefore the court did not err in sentencing the relator to be confined in the Onondaga penitentiary for the term of one year, under chapter 209, Laws of 1874, as amended by chapter 108, Laws of 1876.

A further objection is made that the sentence is invalid because it did not conform to the latter statute, which provides that the judge may " sentence such person to imprisonment in such penitentiary, *there to be received, kept and employed in the manner prescribed by law and the rules and discipline of such penitentiary.*" The objection is that the words italicized are not contained in the sentence. Those words are no part of the sentence, but are simply directory to the keeper of the penitentiary, prescribing what shall be done with the prisoner and how he shall be kept after he reaches there.

We are, therefore, of the opinion that the relator was properly sentenced, and that the order appealed from should be affirmed.

All concur.

Order affirmed.