PEOPLE ex rel. SHELDON v. CURTIN.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1912.)

1. ADULTERY (§ 16*)—SENTENCE AND PUNISHMENT—STATUTORY PROVISION.

Though a commitment of a female to the Western House of Refuge for Women for adultery was for a term of three years, unless she shall sooner be discharged by the board of managers, and the State Charities Law (Consol. Laws 1909, c. 55) § 226, authorizing such commitment, pro-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vides that it shall not be for a definite term, but that such female may be paroled or discharged at any time after commitment by the board of managers, and shall, in any case be detained not longer than three years, there was a substantial compliance with the statute, and the commitment was not invalid.

[Ed. Note.—For other cases, see Adultery, Cent. Dig. § 37; Dec. Dig. § 16.*]

2. ADULTERY (§ 16*)—SENTENCE AND PUNISHMENT—STATUTORY PROVISION.

The law establishing the Western House of Refuge for Women (State Charities Law [Consol. Laws 1909, c. 55]) provided, in section 226, for the commitment of females convicted of petit larceny, habitual drunkenness, of being a common prostitute, of frequenting disorderly houses, "or of any misdemeanor." Held that, though the Charities Act does not specifically name adultery as one of the offenses for which a commitment may be made, the statute will be held to include any misdemeanor within the general description of the act, and a commitment to the Refuge for that offense was proper.

[Ed. Note.—For other cases, see Adultery, Cent. Dig. § 37; Dec. Dig. § 16.*]

3. ADULTERY (§ 16*)—SENTENCE AND PUNISHMENT—STATUTORY PROVISION.

State Charities Law (Consol. Laws 1909, c. 55) provides in section 226 for the commitment of females convicted of petit larceny and other specified offenses "or of any misdemeanor." Pen. Law (Consol. Laws 1909, c. 40) § 102, provides for the punishment of adultery by imprisonment in a penitentiary or county jail for not more than six months or by fine. Held, that the punishment provided by Penal Law is not exclusive, but is concurrent, and a commitment to the House of Refuge for adultery under the Charities Act was proper.

[Ed. Note.—For other cases, see Adultery, Cent. Dig. § 37; Dec. Dig. § 16.*]

Spring and Foote, JJ., dissenting.

Appeal from Orleans County Court.

Habeas corpus by the People of the State of New York, on the relation of Fay Sheldon, as next friend of Ruth Sheldon, against Alice Curtin, as Superintendent of the Western House of Refuge for Women. From an order dismissing the writ, relator appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Kellogg & Crabb, for appellant.
C. B. Alverson, for respondent.

KRUSE, J.   The primary question presented by this appeal is whether the relator was properly committed to the Western House of Refuge for Women, at Albion, upon her plea of guilty to the indictment for adultery, which was made a misdemeanor in this state by an amendment to the Penal Code in 1907 (Laws of 1907, c. 583), and is now embodied in the Penal Law (Penal Law, §§ 101, 102). The Western House of Refuge for Women was established in 1890 by chapter 238 of the Laws of 1890. By section 8 of that act, it was provided that any female between the ages of 15 and 30 years convicted of "petit larceny, habitual drunkenness, of being a common

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

prostitute, of frequenting disorderly houses or houses of prostitution or of any misdemeanor, and who is not insane or mentally or physically incapable of being substantially benefited by the discipline of said institution," might be sentenced and committed to that institution for a term of five years, unless sooner discharged by the board of managers thereof. This provision has ever since been retained substantially in the statute law of this state, and is now embodied in the State Charities Law (Laws of 1909, c. 57; Consolidated Laws, c. 55) § 226. Section 226 of that law provides that the commitment shall not be for a definite term, but any such female may be paroled or discharged at any time after a commitment by the board of managers of such institution,. and shall not in any case be detained longer than three years.

[1] The commitment in this case is for a term of three years, unless she shall sooner be discharged by the board of managers. While that is not literally in accordance with the language of the statute, I think it is in substance and effect.

[2] The punishment for adultery, according to the Penal Law (section 102), is imprisonment in a penitentiary or county jail for not more than six months, or by a fine of not more than $250 or both. It is contended that the provisions of section 226 of the State Charities Law for committing females to the institutions therein named apply only to the offenses specifically enumerated therein, and to misdemeanors for which no specific punishment is prescribed in the Penal Law, and not to adultery, for which the Penal Law has fixed the punishment, as stated. I think the Charities Act includes any misdemeanor committed by a person within the description covered by that act. The Penal Law provides that, where the performance of an act is prohibited by statute and no penalty for the violation of such act is imposed in any statute, the doing of such act is a misdemeanor (section 29), and that a person convicted of a crime declared to be a misdemeanor, for which no other punishment is specifically prescribed by the Penal Law, or by any other statutory provision in force at the time of the conviction and sentence, is punishable by imprisonment in a penitentiary or county jail for not more than one year, or by a fine of not more than $500, or by both. Section 1937. In that connection it further provides, generally, that an act or omission which is made criminal and punishable in different ways by different provisions of law may be punished under any one of those provisions, but not under more than one, and a conviction or acquittal under one bars a prosecution for the same act or omission under any other provision. Section 1938.

[3] I think the relator could have been imprisoned or fined or both, as the Penal Law provides, or committed under the Charities Act, to the Western House of Refuge, as was done. While offenders committed to such institutions may be detained there longer than the ordinary maximum prison sentence prescribed for the offense of which the offender is convicted, they may also be paroled or discharged at any time by the managers of the institution. Such institutions are especially designed to reform offenders of. the class to which the re-

lator belonged, and, while it is a means of punishment, the primary purpose is reformation. This is the more humane policy and has been adopted in other states as well as our own and in civilized countries generally.

I think the defendant's case falls within that class, and that she was properly committed to the institution from which it is now sought to release her.

The order dismissing the writ of habeas corpus should therefore be affirmed.

McLENNAN, P. J., and ROBSON, J., concur.

SPRING, J. (dissenting). Adultery was first made a crime in this state by chapter 583 of the Laws of 1907; and the provisions of that act are incorporated in the Penal Law (sections 100–103). Section 100 defines the crime. Section 101 provides that a "person who commits adultery is guilty of a misdemeanor," and section 102 fixes the punishment as follows:

"A person convicted of a violation of this article is punishable by imprisonment in a penitentiary or county jail, for not more than six months, or by a fine of not more than two hundred and fifty dollars, or by both."

The prisoner was sentenced in pursuance of the provisions of section 226 of the State Charities Law, which I quote so far as pertinent:

"A female between the ages of fifteen and thirty years convicted by any court or magistrate of petit larceny, vagrancy, under subdivision three or four of section 887 of the Code of Criminal Procedure, habitual drunkenness, of being a common prostitute, or frequenting disorderly houses or houses of prostitution, or of a misdemeanor * * * may be sentenced and committed to the Western House of Refuge for Women at Albion * * * to be there confined under the provisions of law relating to such institution. Such commitment shall not be for a definite term, but any such female may be paroled or discharged at any time after her commitment by the board of managers of such institution, but shall not in any case be detained longer than three years."

The question is whether the punishment specifically prescribed for the crime in the Penal Law must govern in the imposition of the sentence, or may the court, by virtue of the said State Charities Law, extend the term of the punishment beyond that designated for the crime and to a different place of detention than that directed in section 102 of the Penal Law.

Section 2501 of the Penal Law provides:

"All acts and parts of acts which are inconsistent with the provisions of this chapter are repealed, so far as they impose any punishment for crime, except as herein provided."

Section 2188 of the same law contains the following:

"The several sections of this chapter which declare certain crimes to be punishable as therein mentioned devolve a duty upon the court authorized to pass sentence to determine and impose the punishment prescribed [except that the court in certain cases may suspend sentence]."

It is in the Penal Law that we find crimes defined and the measure of punishment to be imposed (section 20); and, unless there is a stat-

ute explicitly providing some other punishment for a named crime, the provisions of the Penal Law should prevail in the infliction of punishment upon a person convicted of a crime.

In section 226 of the State Charities Law there are enumerated specific crimes for the conviction of any of which the court may sentence to the House of Refuge, and then is added "of a misdemeanor." We think it was not intended by this act to empower the court to commit a female convicted of a misdemeanor, other than those specified in the Charities Law, to the Albion House of Refuge where the Penal Law has prescribed a definite punishment for the specific crime which is made a misdemeanor. The inclusion of the term "misdemeanor" in the act mentioned, it would seem, refers to offenses within that general and broad designation where no specific punishment is prescribed in the Penal Law. The Legislature made the offense of adultery a crime, and was precise in defining the punishment to be inflicted on a conviction for its violation. There is nothing in section 226 of the State Charities Law which indicates any intention on the part of the Legislature to infringe upon or alter the mode or extent of the punishment fixed in the Penal Law. While the State Charities Law provides that the commitment to the House of Refuge shall not be for a definite term, yet the effect of the punishment inflicted upon the prisoner, if carried out, may be to detain her 2½ years beyond the maximum limit fixed by section 102 of the Penal Law, and we think the court exceeded its authority in thus disregarding that section.

The right of the relator to review by writ of habeas corpus the power of the court in committing the prisoner is challenged by the learned district attorney. His contention is based upon section 515 of the Code of Criminal Procedure, and section 2016, subd. 2, of the Code of Civil Procedure, which provide that the only method of reviewing a judgment in a criminal action is by appeal, and that a person is not entitled to the writ of habeas corpus where he is detained "by virtue of the final judgment or decree of a competent tribunal of civil or criminal jurisdiction." These provisions have long been in force, and their effect has often been construed by the courts. If we are right in the conclusion arrived at as to the want of power of the court to impose the sentence which it did, then the commitment was void on two grounds: (1) In sentencing the prisoner for the term of three years; and (2) in committing her to the House of Refuge.

It has invariably been held that the writ of habeas corpus is available to one attacking the jurisdiction of the court imposing the sentence. Beyond that, there is much support for the proposition that, even though the court has jurisdiction of the person and authority to render a judgment, yet, if it did not possess the power to render the judgment pronounced, it was not the judgment of a competent tribunal within the meaning of that term, and was void. People ex rel. Johnson v. Webster, 92 Hun, 378, 380, 36 N. Y. Supp. 995; People ex rel. Tweed v. Liscomb, 60 N. Y. 559, 19 Am. Rep. 211; People ex rel. Young v. Stout, 81 Hun, 336, 341, 30 N. Y. Supp. 898;

People ex rel. Clark v. Keeper, etc., 176 N. Y. 465, 470, 68 N. E. 884; People ex rel. Stokes v. Riseley, 38 Hun, 280; People ex rel. Stabile v. Warden, etc., 202 N. Y. 138, 152, 95 N. E. 729. After a very elaborate review of the authorities, the principle was thus announced in People ex rel. Tweed v. Liscomb, 60 N. Y., supra, at page 591, 19 Am. Rep. 211, et seq:

"A party held only by virtue of judgments thus pronounced, and therefore void for want of jurisdiction, or by reason of the excess of jurisdiction, is not put to his writ of error, but may be released by habeas corpus. It will not answer to say that a court having power to give a particular judgment can give any judgment, and that a judgment not authorized by law, and contrary to law, is merely voidable and 'not void, and must be corrected by error. This would be trifling with the law, the liberty of the citizen, and the protection thrown about his person by the bill of rights and the Constitution, and creating a judicial despotism. It would be to defeat justice, nullify the writ of habeas corpus by the merest technicality, and the most artificial process of reasoning. * * * A prisoner condemned for grand larceny, for which the statutory punishment is imprisonment in the state prison for a term not exceeding five years, and who is sentenced for ten years, is not, after the expiration of the first five years, held by 'due process of law,' or the 'judgment of a court of competent jurisdiction.' * * * If a court having jurisdiction of the person of the accused, and of the offense with which he is charged, may impose any sentence other than the legal statutory judgment, and deny the aggrieved party all relief except upon writ of error, it is but a judicial suspension of the writ of habeas corpus. That writ is alike a protection against encroachments upon the liberty of the citizen by the unauthorized acts of courts and judges, as against any mere arbitrary arrest."

There are many cases where the writ was held not to be the proper remedy, but, as I interpret them, they do not infringe upon the principle adverted to.

In People ex rel. Scharff v. Frost, 198 N. Y. 110, 91 N. E. 376, 139 Am. St. Rep. 801, the relator plead guilty to an indictment charging him with seduction. He was remanded for sentence and intermarried with the woman seduced, and sentence was suspended. Nearly nine months later the suspension of sentence was revoked, and he was sentenced to state prison for a long term of years, and he sought to review the validity of the judgment by writ of habeas corpus, and the court held that the remedy was by appeal, on the ground' that the court had jurisdiction "to pronounce the sentence which it did pronounce unless the fact of the defendant's marriage to the complainant was established by competent proof." Inasmuch, however, as the subsequent marriage depended upon extraneous proof and the court's determination of that fact did not appear in the record, the relief was denied the relator. Nor was the court authorized to commit the prisoner to the House of Refuge. Section 102 of the Penal Law specified, not only the maximum term of incarceration, but also the place of detention. To imprison a defendant in a state prison where the punishment is by statute limited to the county jail is an excess of jurisdiction invalidating the sentence. The correctness of this principle is well exemplified in this case, as the term in the House of Refuge is not a definite one and the length of the detention up to three years depends upon the managers of the institution.

The validity of the commitment in this institution may be tested

by writ of habeas corpus. In People ex rel. St. Clair v. Davis, 143 App. Div. 579, 583, 127 N. Y. Supp. 1072, 1075, where it was asserted that the relator was illegally committed to the reformatory for women at Bedford, the court in commenting upon the availability of the remedy by habeas corpus used this language:

"To state the case concretely, appellant contends that under no circumstances may a person guilty of the offense of which she stands convicted be sentenced to confinement in the Bedford Reformatory for Women. If that is so, then she is entitled to relief in this proceeding; otherwise not."

The rule obtains that where the prisoner has been sentenced for a longer term than can be legally imposed he may not be discharged, but remanded for re-sentence. People ex rel. Bedell v. Kinney, 24 App. Div. 309, 48 N. Y. Supp. 749; People v. Kelly, 97 N. Y. 212. These cases have no application to the present review for the reason that the prisoner at the time the application for the writ was made had been detained more than nine months, which was in excess of the maximum sentence which could have been inflicted.

The order dismissing the writ should be reversed, and the prisoner discharged from custody.

FOOTE, J., concurs.